IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE E. STEINBERG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0562-N |
| | § | |
| JAMES H. BRENNAN, III, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion to Strike Federal Securities Fraud Cause of Action, filed on September 14, 2004, and Defendant's Second Motion for Partial Summary Judgment, filed on the same date. Because the amendment adding a federal securities fraud claim was unauthorized, the Court grants the motion to strike. Additionally, because the contract at issue includes provisions in which Plaintiff unequivocally disclaims reliance on representations presently made the basis of his common law fraud claim, the Court grants the motion for partial summary judgment.

### I. BACKGROUND

On or about September 14, 2001, Plaintiff Lawrence E. Steinberg of Texas and Defendant James H. Brennan, III of Tennessee executed a stock purchase agreement (the "Agreement"). Under the terms of the Agreement, Steinberg would purchase from Brennan 20,000 shares of common stock of United American Companies, Inc. ("UAC") for $50,000. In February 2003, Steinberg sued Brennan in Texas court alleging breach of contract and common law fraud. The former cause of action rests on an allegation that Steinberg had paid

MEMORANDUM OPINION AND ORDER – PAGE 1

$50,000, but not received the 20,000 shares. The fraud claim rests on an allegation that Steinberg entered the agreement in reliance upon Brennan's false representations of UAC's viability. Brennan removed to this Court in March 2003, invoking diversity jurisdiction. Brennan concedes liability on the breach of contract claim. He claims that, in conformity with the Agreement, he has offered to repurchase the disputed shares from Steinberg and to reimburse Steinberg for costs and attorneys' fees related to this suit.

Steinberg continues to press the fraud claim, however, and Brennan contests it. On July 15, 2004 this Court granted Brennan's motion to dismiss the fraud claim, on the grounds that Steinberg's petition failed to allege fraud with particularity as required by FED. R. CIV. P. 9(b). Steinberg filed an amended complaint on August 3, 2004, which added some factual detail to the common law fraud claim as well as a new cause of action for federal securities fraud. Brennan now moves to strike the new federal cause of action and for summary judgment on the common law fraud claim.

## II. STEINBERG'S ADDITION OF SECURITY LAW CLAIMS IS UNTIMELY

This Court's Scheduling Order of April 29, 2003 directed that "[a]ny motion for leave to amend pleadings must be filed within 180 days of this Order." That deadline passed in October, 2003. The Court's order of July 15, 2004, which directed Steinberg to replead in order to remedy deficiencies in his common law fraud claim, was not an invitation to add new causes of action in contravention of the Scheduling Order. Steinberg did not file a motion to amend in connection with the new cause of action, and does not presently offer any explanation for his failure to add this claim within 180 days of April 29, 2003. Accordingly,

MEMORANDUM OPINION AND ORDER – PAGE 2

he fails to meet the Federal Rules' requirement for exceptions to the Scheduling Order. *See* Fed. R. Civ. P. 16(b)("a schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . ."). The motion to strike Count III of the Amended Complaint is therefore granted.[1]

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is material if its resolution is potentially outcome determinative. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Boudreaux v. Swift Transportation Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The Court must accordingly view all facts and inferences in the light most favorable to the nonmoving party. *Id.* at 540. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### IV. THE CONTRACTUAL DISCLAIMER PRECLUDES STEINBERG'S FRAUD CLAIM AS A MATTER OF LAW

To prevail on a common law fraud claim under Texas law, a plaintiff must establish (1) the defendant made a material representation; (2) the representation was false; (3) the

---

[1] Contrary to Steinberg's claim, he is not presently entitled to amend of right, *see* FED. R. CIV. P. 15(a), because Brennan answered on October 30, 2003.

defendant either knew the representation was false when made or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that it be acted upon; (5) the representation was in fact relied upon; and (6) damage to the plaintiff resulted. *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 612 (Tex. App. – Waco 2000, pet. denied) (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)). Steinberg's complaint asserts that in September 2001, Brennan fraudulently "represented to Steinberg that [UAC] was a viable, healthy corporation that had just raised $7 million from the sale of its stock by Jeffries & Company, an investment banking firm." Steinberg's evidence for these representations consists of his personal declaration[2] and a handwritten note, dated September 10, 2001, that Brennan faxed to Steinberg. The note provides information on a number of investment opportunities and then states:

> Following is some material on another of our companies, [UAC]. They don't need any money-Jeffries has just done $7mm in equity ($2mm of their own money and $5mm from Mass Mutual Insurance).
> UAC has closed a merger with our shell, Providence Capitol I, and Jeffries will trade the stock 1st quarter 2002 in the $6-10 per share range.
> We made arrangements last week to buy 80,000 free trading unrestricted shares of stock in UAC at $2.50 per share from a former consultant to the Company. Day [?] and I are buying half of it ($100,000) and thought that you might want the rest.

---

[2] Brennan objects to numerous statements in Steinberg's declaration as beyond the scope of the particularized fraud allegations in the complaint. Because the Court holds that Steinberg's fraud claim is precluded as a matter of law, it is not necessary to rule on these objections.

MEMORANDUM OPINION AND ORDER – PAGE 4

> Perhaps you can put $250,000 in the five Debentures and $100,000 in the private UAC stock purchase. The UAC stock will trade in early 2002 and your shares will be completely free trading.
> Let's discuss this all.
> Regards-
> Jim Brennan.

Steinberg claims that UAC was in fact in dire straits, and that this letter "exemplifies" Brennan's false representations regarding UAC's capitalization and viability. He further claims that he relied to his detriment on these representations when he purchased UAC stock. The Court agrees with Brennan that Steinberg cannot establish the fifth element of his fraud claim, reliance, because the parties included an effective disclaimer of reliance in the Stock Purchase Agreement.

### *A. Legal Standard*

Texas law recognizes a power of contracting parties to create contractual provisions that disclaim reliance on prior representations or promises. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997) (disclaimer of reliance precluded fraud claim based on prior representations); *cf. Prudential Ins. Co. of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156 (Tex. 1995) ("as is" designation in real estate contract precluded finding that seller's prior representations were a cause in fact of harm related to subsequently discovered asbestos). A potentially conflicting doctrine holds that fraud in the inducement prevents a contract, including merger clauses and disclaimers of reliance, from coming into being, and that parol evidence is admissible to demonstrate fraud. *Schlumberger*, 959 S.W.2d at 179. The juxtaposition of these doctrines leads to disputes like that presently before the Court, where one party claims that the contractually embodied intent of the parties was to disclaim

MEMORANDUM OPINION AND ORDER – PAGE 5

reliance, and the other complains he would not have signed the contract except for a particular misrepresentation.

The *Schlumberger* court determined that the two doctrines may be reconciled based on a totality of the circumstances inquiry. "The contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding." 959 S.W.2d at 179-180 (citations omitted); *cf. Prudential*, 896 S.W.2d at 162 ("The nature of the transaction and the totality of the circumstances surrounding the agreement must be considered."). If the contract and the circumstances of its formation evince clear and specific intent to disclaim reliance on prior representations, then the element of reliance in a fraudulent inducement claim is negated as a matter of law. 959 S.W.2d at 179. The *Schlumberger* court found such clear and specific intent where sophisticated parties, represented by competent legal counsel, included an emphatic, particularized disclaimer of reliance in a contract that resolved a dispute over the valuation of an interest in a dissolving joint venture.[3] *Id.* at 180. The court did not question the plaintiffs' contention that during the negotiations, the defendants falsely represented the venture was not commercially viable in order to buy them out at an unfairly

---

[3] The venture at issue concerned offshore diamond mining. The disclaimer stated that "each of us [the Swansons] expressly warrants and represents and does hereby state . . . and represent . . . that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that *none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment* and each has been represented by Hubert Johnson as legal counsel in this matter. The aforesaid legal counsel has read and explained to each of us the entire contents of this Release in Full, as well as the legal consequences of this Release." 959 S.W.2d at 180 (emphasis added by *Schlumberger* court). A separate provision acknowledged past controversy over the valuation of the interest and waived all causes of action arising out of the controversy.

MEMORANDUM OPINION AND ORDER – PAGE 6

low price. *See id.* at 174. It found, however, that the contract's language, read in context, unequivocally demonstrated the plaintiffs' intent to forego reliance upon prior representations in order to terminate the joint venture at the agreed price.

*Schlumberger* is open to different interpretations, and the difference between these interpretations matters in the present case. The present contract, as discussed at greater length in the next section, conspicuously and straightforwardly rules out reliance on prior representations. There is no indication, however, that the relevant sections were drafted specially for this transaction, and likewise no evidence concerning the role of counsel or the existence of any prior disputes or negotiations. Brennan accordingly argues for enforceability on the grounds that the contract is straightforward and the deal was arm's-length, while Steinberg argues that the contract "merely reflects the customary recitals and disclaimers made by a customer to his stockbroker," and that the key contextual circumstances of *Schlumberger* are absent.

Accordingly, the Court must determine whether, under *Schlumberger*, the structure and language of a contract may demonstrate a sophisticated party's clear and unequivocal intent to disclaim reliance on prior representations, when central facts of *Schlumberger* – e.g., assistance of counsel, prior dispute, and tailored drafting – are absent. Although *Schlumberger* is not completely clear on this question, the Court concludes based on Fifth Circuit precedent that the answer is yes. While the Fifth Circuit has sometimes described *Schlumberger* in narrow terms, Fifth Circuit opinions have consistently looked to the structure and terms of contracts in order to determine whether clear and unequivocal intent

to disclaim reliance exists under *Schlumberger*. They have implicitly rejected any requirement of emphatic, tailored drafting, or general factual congruity with *Schlumberger*.

The first Fifth Circuit opinion to apply *Schlumberger* was *Dunbar Medical Systems, Inc. v. Gammex Inc.*, 216 F.3d 441 (2000). The court "read *Schlumberger* as holding that particular contract clauses may, under certain limited circumstances, curtail the contracting parties' ability to challenge the contract validity on fraudulent inducement grounds," and stated that "*Schlumberger* gives us some indication of what those circumstances may include." *Id.* at 449. With respect to both an "as is" clause and a merger clause, the court held that "the language of the clause is not sufficient to bar [the] fraudulent inducement claim." *Id.* at 450. The principal ground for this conclusion was that the parties had embodied the allegedly fraudulent representations in the contract as explicit warranties. Because the holding rested on this distinctive circumstance, *Gammex* is not particularly helpful in guiding the Court's present analysis.

Subsequent opinions are more instructive. They have consistently found clear and unequivocal intent to disclaim reliance under *Schlumberger*, based principally or solely on contractual language. In *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399 (5th Cir. 2000), the court considered whether a merger clause precluded a fraudulent inducement claim based on an alleged oral agreement to enter into another contract subsequent to the written contract at issue. The court explained that under *Schlumberger*, "a simple merger clause restricting recovery to that provided by the terms of the contract" would not preclude a fraudulent inducement claim. *Id.* The court found, however, that language stating the contract was "in lieu of any and all prior or contemporaneous agreements, conditions or understandings"

MEMORANDUM OPINION AND ORDER – PAGE 8

explicitly contradicted the assertion that the parties relied on promises to enter further contracts. *Id.* at 400. It therefore held the merger clause enforceable. It did so without mentioning issues such as the role of counsel, the existence of prior disputes, or whether the merger clause was extensively negotiated or specifically drafted for that transaction.

The same result obtained in *Armstrong v. American Home Shield Corp.*, 333 F.3d 566 (5th Cir. 2003). Plaintiffs in that case alleged that defendant made fraudulent representations in the course of negotiations to acquire plaintiffs' business and hire plaintiffs. Based upon a review of the entire employment agreement, the court determined that "the language and intent" of the agreement demonstrated plaintiffs did not rely upon the representations in question. *Id.* at 571. The court concluded that the agreement's generic merger clause did not evince clear intent to disclaimer reliance. It held, however, that another provision giving defendants the sole right to determine whether to expand a particular business program refuted plaintiffs' alleged reliance on a representation that such expansion would take place. Similarly a provision providing that defendants made "no representations, warranties, and/or guarantees of the accuracy of the numbers and/or assumptions" refuted plaintiffs' alleged reliance on certain statistical representations. *Id.* In light of these provisions, the court found that the contract contained "clear and unequivocal disclaimers of reliance." *Id.* In that case as well, the court discerned intent to disclaim reliance entirely from the terms of the contract, without requiring that the relevant clauses be negotiated with the assistance of counsel or drafted specifically for that transaction or in response to a prior dispute.

Finally, in *Cronus Offshore, Inc. v. Kerr-McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848 (E.D. Tex. 2004), *affirmed*, 2005 WL 1023386 (5th Cir. 2005) (unpublished), the district

MEMORANDUM OPINION AND ORDER – PAGE 9

court considered fraud claims based on alleged misrepresentation of a drilling site's viability. The district court summarized *Schlumberger* as holding "that where, as here, a disclaimer of reliance in the contract is negotiated by parties of equal bargaining strength in an arm's-length transaction, it is binding upon the parties and, as a matter of law, precludes claims of both fraudulent inducement and nondisclosure" 369 F. Supp. 2d at 859. It then held that an "as is" clause precluded reliance on representations of viability. The Fifth Circuit upheld the district court's decision in an unpublished opinion. It concluded that the totality of the circumstances supported the district court's enforcement of the "as is" clause, and particularly emphasized the plaintiff's sophistication and utilization of counsel. 2005 WL 1023386 at *1. Neither the district court nor the court of appeals considered whether the "as is" clause at issue had been specifically drafted for that transaction or whether the agreement terminated a dispute.[4]

---

[4] In addition to this authority, a recent unpublished decision of this Court provides persuasive authority for the proposition that contractual language and structure can demonstrate the requisite intent under *Schlumberger*. The Court in *Corporate Link Inc. v. Fairbanks Capital Corp.* held that a merger clause precluded a fraud claim because:

> the merger clause was not buried in the middle of a complex and lengthy contract; instead it was part of a fairly simple six-page agreement. Further, there has been no suggestion that the parties were in unequal bargaining positions or that this was a contract of adhesion. [Citing *Prudential*]. Finally, Corporate Link has not denied being aware of the merger cause, nor has it alleged Fairbanks deceived it into believing the merger clause was absent or unenforceable.

2005 WL 770564, at *9 (N.D. Tex 2005) (Boyle, J.) (unpublished).

This Fifth Circuit authority contradicts Steinberg's assertion that *Schlumberger* was "specific to the facts of that particular situation." The Fifth Circuit has routinely enforced disclaimers of reliance on the basis of contractually evident intent, without requiring the particular constellation of facts that appeared in *Schlumberger*. It also contradicts Steinberg's contention that disclaimers of reliance are unenforceable if they use customary rather than idiosyncratic language. In focusing their inquiry on the contractual text, these Fifth Circuit opinions did not ask whether the contested clauses, like snowflakes, were one of a kind. Instead they proceeded from the presumption that contracting parties intend what they agree to,[5] and inquired whether the contracts went beyond generic merger provisions to evince clear intent to disclaim reliance on the specific type of representation under dispute. *See Armstrong*, 333 F.3d 571; *Kimmons*, 228 F.3d 403. This Court will apply the same analysis. In light of the foregoing discussion, the Court concludes that idiosyncratic drafting and other characteristic facts of *Schlumberger* are not prerequisite for a finding of clear and unequivocal intent under that case. Rather, such intent may be discerned from the totality of the circumstances, and in particular from the text and structure of the contract at issue.

---

[5] *Accord Schlumberger*, 959 S.W.2d at 180 ("Because courts are to assume that the parties intended every contractual provision to have some meaning, [citations omitted], we must presume that the parties contemplated, by the inclusion of this clause, that the Swansons would not rely on any representations of Schlumberger about the commercial feasibility and value of this project, which, after all, was the very dispute that the release was supposed to resolve. Therefore, we conclude that the disclaimer of reliance is binding . . . .").

### *B. The Agreement Expresses Steinberg's Intent to Rely on His Own Research Rather Than Prior Representations about UAL's Capitalization and Liability*

The Court has concluded that under Texas law, the text and structure of an agreement, considered in light of available evidence related to its formation, can demonstrate contracting parties' intent to disclaim reliance on prior representations. The Court additionally concludes that the present Agreement and surrounding facts demonstrate Steinberg's clear and unequivocal intent to rely on his own research and assessments rather than Brennan's representations.

As in *Armstrong*, the present Agreement goes beyond an omnibus merger clause to include numerous specific provisions that directly contradict Steinberg's alleged reliance on prior representations concerning UAL's capitalization and viability. Paragraph 2, "Seller's Representations," indicates that Brennan represents the shares to be free and clear of claims, liens, encumbrances, and restrictive legends, but has made "[n]o representations as to the Company's business or prospects." For his part, Steinberg represents in Paragraph 3, "Purchaser's Representations," that:

> (b) No representations as to the Company's business or prospects have been made to the Purchaser by the Seller or any agents regarding an investment in the Shares. The Purchaser acknowledges that neither the Company nor the Seller has prepared, and that neither the Company nor the Seller has been requested by the Purchaser to prepare, [*sic*] comprehensive written prospectus or disclosure statement [*sic*] . . . that otherwise might be required if the sale of the Shares to the Purchaser were required to be registered under [the Securities Act of 1933];

> (c) Purchaser has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of an investment in the Shares;
>
> (d) Purchaser has been given an opportunity to inquire of all the officers and directors of the Company, as well as full and complete access to all documents, books and records concerning the business of the Company, its financial history, current circumstances, and prospects[.]

Finally, Steinberg represents and warrants in Paragraph 4, entitled "Accredited Investor," "that he is a knowledgeable and experienced investor," and that he qualifies as an accredited investor under SEC rules as confirmed by check marks next to criteria for that status.

This contract comprehensively sets forth an arm's-length transaction between sophisticated parties who understand the risks involved in stock transfers and have allocated those risks in a deliberate manner.  In particular, it allocates the burdens and associated risks of verifying the financial history and viability of the Company to the purchaser, not the seller. Furthermore, Steinberg as purchaser warrants and represents that he is qualified to assume those burdens and that he has been permitted to take necessary steps to minimize those risks. These disclaimers, which specifically address the category of representation now at issue, make clear that Steinberg did not rely on Brennan's prior representations.[6]

Steinberg argues, however, that the disclaimer of reliance does not bind him because he asserts it is "boilerplate."  The Court has already rejected Steinberg's contention that

---

[6] Indeed, Paragraph 1 of the Agreement states that *Brennan* makes the sale in reliance upon *Steinberg's* representations and warranties, which include Steinberg's representations of sophistication and opportunity to research.

MEMORANDUM OPINION AND ORDER – PAGE 13

Texas law requires disclaimers of reliance to be individually drafted. The following passage from *Prudential* explains the relevance of the "boilerplate" designation to the present inquiry:

> The nature of the transaction and the totality of the circumstances surrounding the agreement must be considered. Where the "as is" clause is an important part of the basis of the bargain, not an incidental or "boiler-plate" provision, and is entered into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he does not rely on representations by the seller should be given effect.

*Prudential*, 896 S.W.2d at 162, *cited in Schlumberger*, 959 S.W.2d at 181. The doctrine of *Schlumberger* and *Prudential* is not that disclaimers of reliance must be distinctively phrased. It is that the language and structure of a contract, considered in light of any relevant facts surrounding its formation, must evince intent to disclaim reliance on past representations, *e.g. Armstrong*, *supra*, rather than acquiescence to obscure, unilaterally imposed conditions of a more powerful party, *e.g.*, *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 612 (Tex. App. – Waco 2000, pet. denied) (disclaimer unenforceable in contract between bank and unsophisticated customer and cosigner); *Woodlands Land Development Co. v. Jenkins*, 48 S.W.3d 415 (Tex. App. – Beaumont 2001, no pet.) (same result for nonnegotiable contract between housing developer and home purchaser).

The requisite intent is manifest in the present case. Steinberg makes no attempt to recant his representations of sophistication and wealth, and the Court considers it undisputed that the present contract was between "parties of relatively equal bargaining position." The relevant provisions were not merely incidental to the contract. Indeed, they are so straightforward and so central to the agreement that a party of Steinberg's professed sophistication would have to be negligent or duplicitous to sign the agreement without

MEMORANDUM OPINION AND ORDER – PAGE 14

intending to acquiesce to them. The Agreement is just over four pages long and is written in short, straightforward paragraphs. Both parties initialed or signed each page, and Steinberg indicated his accredited investor status by placing check marks next to specific criteria. The three paragraphs discussed above make up nearly half the text of the Agreement. Thus, the sheer volume of provisions devoted to risk allocation demonstrates that the disclaimers form "an important part of the basis of the bargain." This conclusion finds further support in obvious economic reasons why a sophisticated seller of stock would insist on such provisions, and why a sophisticated buyer would not accede to them lightly. Accordingly, the disclaimer provisions cannot be considered "boilerplate" under *Prudential* and *Schlumberger*.

Nor is the Court swayed from its analysis by Steinberg's assertion that the disclaimer clauses are counterfactual. Steinberg emphasizes that rather than stating that the parties *do not rely* on past representations, the Agreement states as a matter of apparent historical fact that, for example, "[n]o representations as to the Company's business or prospects have been made to the Purchaser by the Seller . . . ." Steinberg claims that these statements are simply wrong, because Brennan's fax in fact contained statements about the company.

As an initial matter, the Court rejects Steinberg's suggestion that any contradiction between the contract and the faxed note creates a fact issue for the jury. Enforceable disclaimer clauses do not merely constitute evidence of nonreliance under *Schlumberger* — they preclude the reliance element of a fraud claim as a matter of law.[7] 959 S.W.2d at 179.

---

[7] The Court similarly rejects Steinberg's contention that "a fact issue is presented whether the facts in a given case are governed by *Schlumberger* or are distinguishable from

MEMORANDUM OPINION AND ORDER – PAGE 15

A somewhat stronger argument is that the juxtaposition of the Agreement and the fax supports Steinberg's contention that the contract was mere boilerplate that did not reflect the understanding and intent of the parties. The Court must reject this contention for reasons already discussed. The statement in question appears in two places in the Agreement, one of which is Steinberg's own representations. Given Steinberg's sophistication and the conspicuousness and straightforwardness of these statements in the contract, his protests of counterfactuality constitute self-indictment. If Steinberg truly interpreted these provisions to inaccurately state historical fact, then he should not have agreed to the contract in which they appeared.

Finally, for purposes of determining whether the contract reflects the requisite clear and unambiguous intent under *Schlumberger*, this Court concludes that the statements at issue, considered in context of the entire Agreement, are essentially synonymous with a statement that the purchaser does not rely on past representations. Every stock transaction must include the exchange of some information about the company. This information does not necessarily constitute a "representation," which in this context clearly refers to "a presentation of fact . . . made to induce someone to act, esp. to enter into a contract." *See* BLACK'S LAW DICTIONARY 1327 (8th ed. 2004). In connection with other parts of the Agreement that indicate Steinberg's ability and opportunity to inspect UAL's finances, this contract's "no representations" provisions make clear that any past statements about the

---

it." The question whether a claim is precluded as a matter of law does not become a jury question simply because it involves consideration of the totality of circumstances.

MEMORANDUM OPINION AND ORDER – PAGE 16

company were merely informational, and were not meant by either party to supplant the sophisticated purchaser's own research as the ultimate basis for his purchasing decision.[8]

## IV. CONCLUSION

Because Steinberg is precluded from establishing an essential element of his fraud claim due to the disclaimers of reliance in the agreement, that claim fails as a matter of law. Accordingly, the motion for partial summary judgment is granted. Additionally, because Steinberg's amendment adding a federal securities fraud claim was unauthorized, unjustified, and untimely, the motion to strike is granted.

SIGNED July 29, 2005.

_____
David C. Godbey
United States District Judge

---

[8] Even if the "no representations" provisions were, as Steinberg alleges, patently counterfactual, Steinberg's representation would still be tantamount to an explicit disclaimer of reliance. A party's intent to disclaim reliance on past representations may appear in its acceptance of contractual terms that foreclose reasonable reliance. For example, the Fifth Circuit concluded in *Armstrong* that the plaintiffs did not rely on representations that the other party would expand a "Systems Check" program, because the contract allocated to the other party "the sole right to determine whether to implement a system check program and to what extent." 333 F.3d at 571. A sophisticated party similarly cannot be deemed to enter a contract in reliance on representations he stipulates were never made.

MEMORANDUM OPINION AND ORDER – PAGE 17